```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
MCCULLOCH ORTHOPEDIC SURGICAL                              :
SERVS., PLLC, a/k/a DR. KENNETH E.                         :
MCCULLOCH,                                                 :
                                    Plaintiff,   :             14-CV-6989 (JPO)
                                                 :
              -v-                                :             OPINION AND ORDER
                                                 :
UNITED HEALTHCARE INS. CO. OF                    :
NEW YORK, a/k/a OXFORD (PATIENT                  :
MARY BETH YARROW),                               :
                                    Defendant.   :
-----------------------------------------------------------X
```

J. PAUL OETKEN, District Judge:

Plaintiff McCulloch Orthopedic Surgical Services, PLLC, the practice of Dr. Kenneth E. McCulloch ("McCulloch"), brought an action for promissory estoppel against a party identified in the case caption as "United Healthcare Insurance Company of New York a/k/a Oxford (Patient Mary Beth Yarrow)" ("Oxford") in New York Supreme Court for New York County. Oxford removed the action to this Court. McCulloch moves to remand and Oxford moves to dismiss. For the reasons that follow, McCulloch's motion is denied and Oxford's motion is granted.

**I.   Background**

McCulloch performed arthroscopic knee surgery on Mary Beth Yarrow ("the Patient") on February 23, 2012. (*See* Dkt. No. 38, Amended Complaint ¶ 7 ["Amended Complaint"].) Prior to performing the surgery, on February 15, 2012, McCulloch's staff "contacted [Oxford] and was assured that the Patient was covered by a health care plan administered by [Oxford], that such plan provided for payment to out-of-network physicians, that the plan covered the surgical procedures that [McCulloch] would be providing for the Patient, and that [Oxford] would reimburse [McCulloch] at 70% of UCR [usual, customary, and reasonable] rates for such

1

procedures." (*Id.* ¶ 3.)  After the surgery, McCulloch billed Oxford $34,024, allegedly the UCR rate for the procedures it had performed.  (*Id.* ¶ 8.)  After certain "deductions and offsets," McCulloch claimed that Oxford should pay him $15,479.80 for the surgery.  (*Id.* ¶ 10.)  Oxford paid $641.66.  (*Id.*)

McCulloch, noting that $641.66 is "less than what [Oxford] spends on a set of tires for the limousine of its CEO," sued Oxford in New York Supreme Court on July 3, 2014.  (Dkt. No. 4, Ex. 1; Dkt. No. 23, McCulloch's Reply Memorandum of Law in Further Support of its First Motion to Remand, at 3.)  On July 15, 2014, McCulloch served a summons and complaint on the New York Department of Financial Services ("NYDFS"), which insurers must appoint as agent for service of process under New York Insurance Law § 1212.  NYDFS forwarded the summons and complaint to CT Corporation, Oxford's designated agent for service of process, by regular mail.  CT Corporation received the papers on July 28, 2014.  Oxford filed a notice of removal 30 days later, on August 27, 2014.  (Dkt. No. 1.)

Shortly thereafter, Oxford filed a motion to dismiss the Complaint and McCulloch filed a motion to remand the case to state court.  (Dkt. Nos. 3, 8.)  After both motions were fully briefed, McCulloch—without seeking leave of the Court or opposing counsel—filed a putative amended complaint.  (Dkt. No. 38.)  Although the filing was procedurally improper, the Court granted McCulloch leave to amend *nunc pro tunc* and accepted the filing.  (Dkt. No. 41.)  McCulloch again moved to remand the case to state court or, in the alternative, to dismiss the Amended Complaint without prejudice.  (Dkt. No. 42.)  Oxford renewed its motion to dismiss. (Dkt. No. 51.)

## II.     Motion to Remand

McCulloch moves to remand this case to state court on the grounds that this Court lacks subject matter jurisdiction and that Oxford's removal of the case to federal court was untimely.

Oxford moves to dismiss on the ground that McCulloch's claims, although styled as claims for promissory estoppel, are completely preempted by section 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a), and also contends that the removal was timely.

### A.     Legal Standard

In order to remove a civil action to federal court, a defendant must file a notice of removal "within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b). This statute is "strictly construed against removal and all doubts should be resolved in favor of remand." *Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 383 (S.D.N.Y. 2006) (internal quotation marks omitted).

Under 28 U.S.C. § 1441(a), a defendant may remove from state court to federal court "any civil action . . . of which the district courts of the United States have original jurisdiction." In most cases, a defense that plaintiff's claims are preempted by federal law will not confer federal question jurisdiction under the well-pleaded complaint rule. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). However, "[w]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption, the state claim can be removed to federal court." *Arditi v. Lighthouse Int'l*, 676 F.3d 294, 298 (2d Cir. 2012) (internal quotation marks omitted). In order for a defendant to show that a claim is completely preempted by ERISA, the defendant must demonstrate not only that "the state law cause of action is preempted by ERISA" under the express preemption provision contained in ERISA section 514(a), 29 U.S.C. § 1144(a), but also that "th[e] cause of action is 'within the scope' of the civil enforcement provisions of ERISA § 502(a), 29 U.S.C. § 1132(a)." *Plumbing Indus. Bd. v. E.W. Howell Co.*, 126 F.3d 61, 66 (2d Cir. 1997) (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–67 (1987)); *see also*

*Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 371 (4th Cir. 2003) ("The fact that a state law claim is 'preempted' by ERISA—i.e., that it conflicts with ERISA's exclusive regulation of employee welfare benefit plans—does not . . . provide a basis for removing the claim to federal court. The only state law claims properly removable to federal court are those that are 'completely preempted' by ERISA's civil enforcement provision, § 502(a)."); *Towne v. Nat'l Life of Vt., Inc.*, 130 F. Supp. 2d 604, 608 (D. Vt. 2000) ("[T]he fact that a claim may ultimately be pre-empted by ERISA § 514(a) can *never*—standing alone—give federal courts removal jurisdiction over a case. At least one of the claims asserted by the plaintiff must be completely pre-empted under ERISA § 502(a) in order for removal to federal court to be proper.").

The Supreme Court has clarified that an action is "within the scope" of § 502(a) "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004); *see also Towne*, 130 F. Supp. 2d at 607 (noting that only "claims that can properly be characterized as seeking to recover benefits, enforce rights, or clarify rights to future benefits under a plan covered by ERISA are said to be 'completely preempted'" (citing *Metro. Life*, 481 U.S. at 62–67)).

**B.     Discussion**

McCulloch moves to remand the case to state court on the grounds that removal was untimely and that the Court lacks jurisdiction over the case.

**1.     Timeliness**

The parties agree that if the 30-day period for removal runs from the date the Superintendent of Financial Services received the Complaint, then the notice is untimely and the case must be remanded; if the period runs from the date Oxford's actual agent received the

pleading, the removal is timely. Thus, the first question is when the clock starts running for removal.

Although the Second Circuit has not ruled on this question, the weight of authority (both within the circuit and elsewhere) holds that actual receipt by the defendant (or the defendant's actual agent) starts the clock for removal. *See, e.g.*, *Fernandez v. Hale Trailer Brake & Wheel*, 332 F. Supp. 2d 621, 624 (S.D.N.Y. 2004); *Cygielman v. Cunard Line Ltd.*, 890 F. Supp. 305, 307 (S.D.N.Y. 1995); *see also* CHARLES ALAN WRIGHT, ET AL., 14C FEDERAL PRACTICE & PROCEDURE § 3731 & n.23 (4th ed. 2013) (collecting cases). And that makes sense, because "statutory agents are not true agents but merely are a medium for transmitting the relevant papers." WRIGHT ET AL., *supra*, § 3731. Therefore, the Court concludes that the 30-day period began on July 28, 2014, when Oxford's true agent—CT Corporation—received the pleadings. Removal was timely.[1]

### 2. Which Complaint?

McCulloch contends that the Court should not consider certain attachments to the original Complaint in evaluating the motion to remand because the Amended Complaint has superseded the Complaint and rendered the latter a "dead letter." (Dkt. No. 43, Plaintiff's Memorandum of Law in Support of Its Second Motion to Remand at 2.) These attachments include (1) a benefits claim form, (2) a letter from Oxford to McCulloch explaining the terms of the Patient's healthcare plan and detailing which procedures were authorized under that plan, and (3) a letter

---

[1] McCulloch's argues that the "mailbox rule" of Federal Rule of Civil Procedure 6(d) requires that Oxford be deemed to have received the complaint on July 25, 2014, three days after NYDFS mailed it. (Dkt. No. 43, Memorandum of Law in Support of McCulloch's Second Motion to Remand, at 12 (citing Fed. R. Civ. P. 6(d)).) This argument is unmeritorious because Rule 6(d) does not apply to the 30-day deadline for filing a notice of removal. That period is triggered when defendant actually receives the initial pleading, not when the pleading is mailed. *See, e.g.*, *Daniel v. United Wis. Life Ins. Co.*, 84 F. Supp. 2d 1353, 1355–56 (M.D. Ala. 2000) (Thompson, J.) (citing 28 U.S.C. § 1446(b)).

from Oxford to McCulloch explaining that Oxford no longer makes direct payments to out-of-network physicians.  (*See* Dkt. No. 4, Ex. A.)

It is settled law that a motion to remand is evaluated on the basis of the allegations as pleaded at the time of removal.  *Vera v. Saks & Co.*, 335 F.3d 109, 116 n.2 (2d Cir. 2003) (per curiam).  Post-removal amendments to the pleadings should not be considered.  *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939) ("The second amended complaint should not have been considered in determining the right to remove, which in a case like the present one was to be determined according to the plaintiffs' pleading at the time of the petition for removal.")  Thus, although the Amended Complaint is operative for all other purposes, for the purposes of the motion to remand, the Court considers only the original Complaint.[2]

### 3.   ERISA Preemption

A "health care provider's [state law] claims against a benefit plan established pursuant to [ERISA]" are, under certain circumstances, "completely preempted by federal law under the two-pronged test for ERISA preemption established in" *Davila*, 542 U.S. 200.  *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 324 (2d Cir. 2011).  In the Second Circuit, *Davila*'s first prong, which asks whether the plaintiff could have brought her state law claim as an ERISA § 502(a)(1)(B) claim, is broken into two steps.  *Id.* at 328.  First, the Court asks "whether the plaintiff is the type of party that can bring a claim pursuant to § 502(a)(1)(B)."  *Id.* (emphasis omitted).  Second, the Court asks "whether the actual claim that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)."  *Id.* (emphasis omitted).

---

[2] Even if the Court considered the remand motion on the basis of the Amended Complaint, the Court could still consider the attachments to the original Complaint because "it [i]s proper for the District Court to look beyond the mere allegations of the complaint to the claims themselves (including supporting documentation) in conducting its analysis."  *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 331 (2d Cir. 2011).

At *Davila*'s second prong, the Court asks "whether there is an independent legal duty that is implicated by the defendant's actions." *Id.* (internal brackets and quotation marks omitted).

### a. *Davila* Prong One, Step One

The first question is whether Oxford is the type of party that can bring an ERISA § 502(a)(1)(B) claim. McCulloch contends that it is not the type of party that can bring a § 502(a)(1)(B) claim because it cannot bring suit under ERISA. Oxford, in response, argues that McCulloch is the type of party that can assert an ERISA claim because it received an assignment of benefits from the Patient and, therefore, has a derivative right to sue as a beneficiary of the Patient's healthcare plan.

Attachment B to McCulloch's Complaint is a health insurance claim form on which the checkbox labeled "YES" for the question "Accept Assignment?" is marked affirmatively. (Dkt. No. 4, Declaration of John T. Seybert, Ex. A, ["Complaint"], Attachment B.) In other words, McCulloch sent Oxford a claim form on which McCulloch purported to have received an assignment of benefits from the Patient. McCulloch argues that, because the benefits plan forbade assignments to out-of-network providers like McCulloch, it does not have the derivative ability to sue and, therefore, is not the type of party who can bring an ERISA claim. Oxford does not dispute that the assignment was invalid.

Nonetheless, McCulloch's argument is unavailing because it conflates two distinct inquires. The relevant inquiry asks only whether the entity bringing suit is the "type of party" that can sue under ERISA § 502(a)(1)(B), and the Second Circuit has held that, in general, parties with assignments of benefits have a derivative ability to sue under ERISA. *See Montefiore*, 642 F.3d at 328-29 (holding that in-network providers who receive valid assignments of benefits can sue under ERISA § 502(a)(1)(B)); *see also Simon v. Gen. Elec. Co.*, 263 F.3d 176, 177–78 (2d Cir. 2001) (stating that "healthcare providers to whom a beneficiary

7

has assigned his claim in exchange for health care" may sue under ERISA); *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna U.S. Healthcare*, No. 15-CV-2007 KBF, 2015 WL 2183900, at *5 (S.D.N.Y. May 11, 2015). The fact that McCulloch's purported assignment may have been ineffective under the terms of the benefits plan does not mean that McCulloch is not the type of entity that has the ability to sue under ERISA. *See Kennedy v. Connecticut Gen. Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir. 1991) ("[A]n assignee cannot collect unless he establishes that the assignment comports with the plan. But . . . subject-matter jurisdiction depends on an arguable claim, not on success.); *Neuroaxis Neurosurgical Associates, PC v. Costco Wholesale Co.*, 919 F. Supp. 2d 345, 351 (S.D.N.Y. 2013) (Cote, J.) (relying on, *inter alia*, *Kennedy* to hold that invalid assignments confer standing to sue); *see also City of Hope Nat. Med. Ctr. v. HealthPlus, Inc.*, 156 F.3d 223, 228 (1st Cir. 1998) (holding that the district court erred in "den[ying Plaintiff] standing to sue because it found the assignment . . . invalid."). McCulloch is, therefore, the type of party that can assert an ERISA § 502(a)(1)(B) claim.

### b.    *Davila* Prong One, Step Two

The second question is whether McCulloch's claims present a "colorable" claim for benefits under ERISA § 502(a)(1)(B). *Montefiore*, 642 F.3d at 328. A crucial component of this question is whether McCulloch's claims concern a "right to payment," rather than the "amount of payment." *Id.* at 331. Importantly—and contrary to McCulloch's repeated insistence—the mere fact that McCulloch's claims might not succeed under ERISA does not mean that they are not preempted by ERISA. The claim need only be "colorable." *Id.*

McCulloch's claims concern a "right to payment." *Id.* In *Montefiore*, the court explained the

> common distinction in the case law between claims involving the "right to payment" and claims involving the "amount of payment"—that is, on the one hand, claims that implicate coverage and benefits established by the terms of the

8

> ERISA benefit plan, and, on the other hand, claims regarding the computation of contract payments or the correct execution of such payments. The former are said to constitute claims for benefits that can be brought pursuant to § 502(a)(1)(B), while the latter are typically construed as independent contractual obligations between the provider and . . . the benefit plan.

*Id.*

Here, McCulloch's claims implicate the coverage and benefits established by the terms of the plan because the claims are, in fact, based on Oxford's alleged representations *about the plan*. (*See* Complaint ¶¶ 4–5 ("At all times relevant, *the plan* which Defendant administered and which covered Ms. Yarrow (a) provided for payment of benefits to out-of-network providers, (b) at the usual and customary rates or at a percentage of such rates, and (c) the plan covered the procedures that Plaintiff performed for Ms. Yarrow. In the instance described hereafter, prior to operating on Ms. Yarrow, Plaintiff and/or his staff verified the elements set forth in the paragraph above. Furthermore, Plaintiff's staff was told that the reimbursement rate would be 70% of the usual and customary rates for the procedures that were proposed for Ms. Yarrow." (emphasis added).)

Indeed, the letter Oxford sent to McCulloch—which letter McCulloch itself specifically cites as evidence of Oxford's promissory representations—shows that Oxford denied McCulloch's requests for payments because of the terms of the plan. *Compare* Complaint, Attachment A (letter explaining that payment is "based on . . . [the t]erms, conditions, exclusions, and limitations of the Member's health benefits plan . . . ."), *with* Complaint, at 2 ("On February 15, 2012, prior to performing the surgery on Ms. Yarrow, Plaintiff contacted Defendant and was assured that the surgery procedures were covered by the Defendant's plan, that Ms. Yarrow was a covered plan participant or beneficiary, and that Defendant would pay Plaintiff as an out-of-network provider *as per the above provisions* for this procedure. Specifically, Defendant submitted a Requested Services Summary in which it approved two out

of the three procedures to be provided by Plaintiff.") (emphasis added), *and Montefiore*, 642 F.3d at 331 (finding that a claim is a "right to payment" claim where it was denied because "services were not covered under the plan" (internal brackets omitted)), *and McCulloch*, 2015 WL 2183900, at *6 ("Indeed, when [McCulloch] telephoned Aetna to ascertain coverage, it received no more than a summary of the terms of the plan as it applies to out-of-network providers; it was told (1) 'that the Patient was covered by a health care plan administered' by Aetna, (2) 'that such plan provided for payment to out-of-network physicians' like plaintiff, (3) 'that the plan covered the surgical procedures that Plaintiff would be providing,' and (4) 'that Defendant would reimburse Plaintiff at 70% of usual and customary reasonable rates for such procedures.') (citing McCulloch's Complaint against Aetna).).

### c. *Davila* Prong Two

The final question is whether Oxford's actions implicate a legal duty independent of its obligations under the benefits plan. McCulloch argues that the phone call with Oxford's representative, on which McCulloch contends it reasonably relied, occasioned an independent legal duty under the common law of promissory estoppel. Even assuming that McCulloch states a claim for promissory estoppel, its argument is squarely foreclosed by Second Circuit precedent. *Montefiore*, 642 F.3d at 332 (specifically rejecting the precise contention that "verbal communications . . . gave rise to an independent legal duty.").

Still, it is worth noting that several cases with similar facts have concluded that there is no ERISA preemption where a confirmatory communication could create a basis for an independent legal duty, even if it is evident that the communication is plan-related. *See Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 599 (7th Cir. 2008); *In Home Health, Inc. v. Prudential Insurance Co. of America,* 101 F.3d 600, 604–07 (8th Cir.1996); *Hospice of Metro Denver v. Group Health Insurance of*

*Oklahoma, Inc.*, 944 F.2d 752 (10th Cir. 1991); *Oak Brook Surgical Centre, Inc., v. Aetna, Inc.*, 863 F. Supp. 2d 724, 730 (N.D. Ill 2012) ("[I]f an insurer incorrectly tells a provider 'the plan says that the moon is made of green cheese,' the provider's misrepresentation claim turns on the representation made by the insurer. If the representation is false, the provider may be able to prevail on a misrepresentation claim regardless of what the plan actually says as the plan's language is irrelevant."). The Ninth Circuit, in *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941 (9th Cir. 2009), held that a confirmatory phone call created an independent legal duty. And the Second Circuit cited *Marin* in *Montefiore*. 642 F.3d at 328. Nonetheless, it is clear that the Second Circuit specifically rejected the argument that confirmatory phone calls create an independent legal duty. This Court is, accordingly, bound to do the same. *See also McCulloch*, 2015 WL 2183900, at *6 n.6.

McCulloch's claim is, therefore, completely preempted by ERISA § 502(a)(1)(B).

### d. McCulloch's Other Arguments

McCulloch offers several additional arguments regarding its motion to remand. These arguments lack merit. First, McCulloch argues that the Court has "discretionary power to remand." (Memorandum of Law at 2.) McCulloch's argument is based on the contention that "there are no longer any federal claim [*sic*] asserted in [this] action." (*Id.*) As the previous three sections made clear, this contention is false. Even if it were true, McCulloch has offered no persuasive reason why the Court should exercise any discretionary power it might have in McCulloch's favor.

Second, McCulloch asks that the Court dismiss the case without prejudice so that it can refile the case in state court. McCulloch offers no support for this argument. Even assuming the Court has discretion to dismiss the case without prejudice, McCulloch has offered no reason why

it should do so—apart from noting that the many "motions [pending before the Court] do not have to be decided if the Court . . . dismisses [the Amended Complaint] without prejudice." (*Id.*)

McCulloch's motions to remand and to dismiss the case without prejudice are denied.[3]

### III. Motion to Dismiss

Oxford moves to dismiss the Amended Complaint. McCulloch's opposition memorandum of law requests only that the case be remanded to state court or dismissed without prejudice. It is, with the exception of one page, identical to McCulloch's memorandum of law in support of its motion to remand the case. McCulloch therefore concedes that, if its claim for promissory estoppel is preempted by ERISA § 502(a)(1)(B), then it cannot state a claim for benefits under ERISA § 502(a)(1)(B). Indeed, the general thrust of all of McCulloch's arguments is that it cannot state any federal claim.

McCulloch is correct to concede this point. It has not alleged an ERISA claim for benefits. Therefore, Oxford's motion to dismiss the Amended Complaint is granted on the ground that the claim for promissory estoppel is completely preempted by ERISA § 502(a)(1)(B) and the Amended Complaint does not state a claim for benefits under that statute. Nonetheless, if McCulloch believes that it can state an ERISA § 502(a)(1)(B) claim, it may amend its Amended Complaint to do so no later than June 22, 2015.

### IV. Conclusion

For the foregoing reasons, McCulloch's motion to remand the case to state court is DENIED and Oxford's motion to dismiss the Amended Complaint is GRANTED.

---

[3] McCulloch's request for attorney's fees in connection with the motion to remand is, therefore, denied *a fortiori*. Oxford's motion for a conference is denied as moot. Oxford's motion to strike the Amended Complaint (still pending on the docket) has already been denied.

The Clerk of Court is directed to close the motions at docket numbers 3, 8, 30, 42, and 55, and to close this case.

SO ORDERED.

Dated: June 8, 2015
New York, New York

_____
J. PAUL OETKEN
United States District Judge